IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JEREMY LEE COLLINS,

     Plaintiff,

     v.                          CASE NO.  25-3077-JWL

JEFF ZMUDA, et al.,

     Defendants.

**<u>MEMORANDUM AND ORDER TO SHOW CAUSE</u>**

Plaintiff Jeremy Lee Collins is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Amended Complaint[1] that are discussed herein.

**I.  Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  Plaintiff is incarcerated at the Winfield Correctional Facility in Winfield, Kansas.  The Court granted Plaintiff leave to proceed in forma pauperis.

Plaintiff alleges that he has overserved his sentences in Case No. 21CR1345 (the "2021 Case") and Case No. 18CR2631 (the "2018 Case").  (Doc. 9, at 2.)  Both are criminal cases brought in the District Court of Sedgwick County, Kansas.  Plaintiff states that he is not attempting to invalidate either criminal sentence.  *Id.*

Plaintiff alleges that he did not receive all of his jail time credit, and that some of his jail time credit was misapplied to a "suspended" and "unrevoked" sentence.  *Id*. at 10.  He also alleges that his good time credit was misapplied.  *Id*.  Plaintiff claims that Sheriff Easter failed to forward all of the jail time credit to Assistant District Attorney Chotimongkol. *Id*.  Plaintiff

---

[1]  Although Plaintiff titled his amended complaint as his "Second Amended Complaint" (Doc. 9), because this is the first amended complaint on file in this case, the Court will refer to it as the Amended Complaint.

alleges that he served an additional 116.5 days (101 days of jail credit plus 15% good time credit) in both the 2021 Case and 2018 Case. *Id.*

Plaintiff names as defendants:  the Kansas Department of Corrections ("KDOC"); Michelle Sullivan, KDOC Sentence Computation Unit Personnel; Ananta Mark Chotimongkol, Sedgwick County Assistant District Attorney; Jeff Easter, Sedgwick County Sheriff; Sedgwick County, Kansas, Board of Commissioners; and Darcie Holthaus, KDOC Secretary of Corrections Designee.  For relief, Plaintiff seeks compensation under K.S.A. § 60-5004 et seq., compensatory damages, and punitive damages. *Id.* at 5.

As Count VII, Plaintiff alleges cruel and unusual punishment in violation of the Eighth Amendment based on his claim that he overserved his sentences in the two criminal cases. *Id.* at 29.  The remaining counts allege false imprisonment based on his claim that he overserved his sentences, with each count being brought against a different defendant: Count I is brought against  Darcie Holthaus; Count II is against Michelle Sullivan; Count III is against ADA Chotimongkol; Count IV is against Sheriff Easter; Count V is against the Sedgwick County Board of Commissioners; Count VI is against the KDOC; and Count VIII alleges a second false imprisonment claim against Chotimongkol.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New*

*Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

A § 2241 petition is appropriate when a prisoner challenges the execution of his sentence rather than the validity of his conviction or sentence. *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody.*" *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) (emphasis added). When the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983. *Heck v. Humphrey*, 512 U.S. 477, 482 (1994); *see also Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) ("The exhaustion of available administrative remedies is a prerequisite for § 2241 habeas

4

relief, although we recognize that the statute itself does not expressly contain such a requirement.") (citation omitted)).

However, Plaintiff is not alleging that he is entitled to a speedier release, he is seeking money damages for allegedly overserving his sentences. Plaintiff alleges that his jail credit was not properly applied. However, it is not clear that Plaintiff actually spent time in custody that he would not have otherwise been required to serve. Plaintiff is currently incarcerated and it is unclear whether Plaintiff received credit for any time that he allegedly overserved.

This Court addressed a similar issue in *O'Quinn v. Kelly*, where the plaintiff alleged that the failure to properly credit his jail time resulted in him being held beyond his proper release date. *O'Quinn v. Kelly*, 2023 WL 7923187, at *1 (D. Kan. 2023).

The Court reviewed a *Martinez* Report submitted in the case and held that:

> The Report states that in "the last legislative session an amendment to K.S.A. 22-3722 was introduced and passed; directing that the jail credit in cases like the plaintiff's will be awarded to post release case rather than to the case involving the new charge(s)." *Id.*; Exhibit L.

> The Report provides that Plaintiff did not "overserve" his sentences because by statute his 2016 case is to run consecutive to his 2011 case, so this period of time was merely shuffled between the new sentence and the life time postrelease on the earlier sentence. *Id.* at 5. The Report states that "[o]ther cases like the plaintiff's have occurred and the issue has been addressed by amendment to K.S.A. 22-3722." *Id.*

> \* \* \* \*

> The Court sympathizes and understands Plaintiff's concern and confusion around the computation of his sentences and the proper award of his jail time credit. This type of situation apparently warranted legislative action to clear up the confusion.

> However, the Court finds that Plaintiff did not overserve his sentence because he was not entitled to apply his jail credit to both his 2016 case and the sentence imposed for his post-release

> violation in his 2011 case. Although the state court decisions
> shuffled the credit from his 2011 case to his 2016 case, because he
> was not entitled to duplicate credit, either way he would have
> served the same amount of time. *See Ewell v. Toney*, 853 F.3d 911,
> 917 (7th Cir. 2017). "[A] section 1983 plaintiff may not receive
> damages for time spent in custody, if that time was credited to a
> valid and lawful sentence." *Id.* (citations omitted). If Plaintiff is not
> entitled to seek damages related to his detention, then there is no
> injury that a favorable decision by a federal court may redress. *See
> id.* at 918 (where judge ultimately found probable cause and denied
> bail, plaintiff would not have been entitled to release any sooner,
> and because her time in custody was later credited to a criminal
> sentence on another charge, plaintiff could not receive damages for
> time spent in custody after her arrest); *see also Jackson v. Ash*,
> 2019 WL 2605490, at *6 (D. Kan. 2019), *adopted* 2019 WL
> 2240450 (D. Kan. 2019) (stating that court was led to believe
> plaintiff was receiving credit for time served and "[w]ithout a
> redressable injury, Plaintiff lacks Article III standing to pursue
> these claims") (citing *see Lujan v. Defenders of Wildlife*, 504 U.S.
> 555, 560-61 (1992); *Ewell*, 853 F.3d at 917–18 (holding plaintiff
> had no standing to press unlawful detention claim where she
> received credit for time served); *Bridewell v. Eberle*, 730 F.3d 672,
> 676–77 (7th Cir. 2013) (holding plaintiff could not receive
> damages for time spent in custody on a valid sentence)).

*Id*. at *3–4. Plaintiff should clarify whether there is any jail time credit that was not applied to

*any* of his sentences, including the one that he is currently serving.

Plaintiff states that he is claiming damages under K.S.A. § 60-5004. A later order

entered in the *O'Quinn* case construed the plaintiff's claim to invoke K.S.A. § 60-5004, "which

provides a civil remedy for individuals who were wrongfully convicted and imprisoned." *Id*. at

Doc. 57 (July 1, 2025 Order). The Court held that:

> To prevail, O'Quinn must ultimately prove that his "judgment of
> conviction was reversed or vacated and either the charges were
> dismissed or on retrial the claimant was found to be not guilty."
> Kan. Stat. Ann. § 60-5004(c)(1)(B); *Matter of Mashaney*, 557 P.3d
> 1231, 1234–35 (Kan. 2024) (holding that this element requires the
> judgment to be reversed or vacated, not simply amended, and that
> the charges must have been dismissed). In addition, O'Quinn
> would need to prove that he "did not commit the crime or crimes

for which [he] was convicted." *Id*. § 60-5004(c)(1)(C); *Matter of Warsame*, 563 P.3d 1281, 1286 (Kan. 2025) (explaining that this element requires the claimant "to prove actual innocence by a preponderance of the evidence . . . and that this was the reason the charges were dismissed). . . . He only alleges that the Defendants failed to accurately apply his one-year jail credit to his term or incarceration. That is insufficient. *See Matter of Sprangler*, 547 P.3d 516, 523 (Kan. 2024) (holding that Section 60-5004 only permits a claimant to recover for wrongful imprisonment if the claimant shows factual innocence and expungement of the original convictions).

*O'Quinn*, Case No. 23-3117-TC-BGS, Doc. 57, at 14 (D. Kan. July 1, 2025).

The Court also found that O'Quinn's claims for money damages against the state defendants in their official capacities were subject to dismissal based on sovereign immunity. *Id.* at 8–9. The Court found that sovereign immunity extends to the state's employees when they are sued for monetary damages in their official capacity, and the KDOC is an arm of the state for Eleventh Amendment purposes. *Id.*

Plaintiff has previously been advised that the KDOC is not a proper defendant and that official capacity claims are barred by sovereign immunity. *See Collins v. Lumbreras*, Case No. 23-3243-JWL, Doc. 8, at 5–7 (D. Kan. Dec. 7, 2023). The Court held that:

> The State of Kansas and its agencies are absolutely immune from suits for money damages under the Eleventh Amendment. The Eleventh Amendment presents a jurisdictional bar to suits against a state and "arms of the state" unless the state waives its immunity. *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009)). Therefore, in the absence of some consent, a suit in which an agent or department of the state is named as a defendant is "proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). It is well established that Congress did not abrogate the states' sovereign immunity when it enacted § 1983. *Quern v. Jordan*, 440 U.S. 332, 338–45 (1979); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).
> For § 1983 purposes, a state official is the state itself when sued in his official capacity. *Will v. Mich. Dep't of State Police*,

491 U.S. 58, 71 (1989). A state officer sued in his official capacity also enjoys this protection. *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017). "The Tenth Circuit has made it clear that where a claimant seeks relief against a KDOC official in his or her official capacity, the party seeks judgment against the KDOC itself, rendering the claim as one against the sovereign." *Jamerson v. Heimgartner*, No. 5:17-3205-JAR-KGG, 2020 WL 1923074, at *10 (D. Kan. April 21, 2020) (citing *Jones v. Courtney*, 466 F. App'x 696, 699–700 (10th Cir. 2012) (collecting cases)). Furthermore, state officers acting in their official capacity are not considered "persons" against whom a claim for damages can be brought under § 1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).

"A party's capacity to sue or be sued in federal court is determined by state law." *Sims v. Kansas Dep't of Corr.*, Case No. 18-01259-EFM-KGG, 2019 WL 4450671, at *4 (D. Kan. Sept. 17, 2019) (citation omitted). "Under Kansas law, absent express statutory authority, legislatively-created government agencies lack the capacity to sue or be sued." *Id*. (citing *Grayson v. Kansas*, 2007 WL 1259990, at *3 (D. Kan. 2007) (citation omitted)). "The KDOC is a legislatively-created government agency, and Kansas law does not permit it to sue or be sued." *Id*. (citing K.S.A. § 75-5203). Furthermore, as an agency of the State, the KDOC has absolute immunity under the Eleventh Amendment to a suit for money damages. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court"); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State, nor its officials acting in their official capacities are 'persons' under § 1983").

*Id*.

Therefore, any claims against the KDOC or against the state defendants in their official capacities would be subject to dismissal. Likewise, any claim for damages under K.S.A. § 60-5004 would be subject to dismissal based on the reasoning set forth above in *O'Quinn*. Plaintiff pleaded guilty in both the 2018 Case and the 2021 Cases, and states that he is not attempting to invalidate either criminal sentence.

Plaintiff also names the Assistant District Attorney as a defendant. Prosecutors are

absolutely immune from liability for damages in actions asserted against them for actions taken "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *see also United States v. Valentine*, 343 F. App'x 723, 724–25 (2nd Cir. 2009) (finding that an error at sentencing was an innocent misunderstanding, and "the district court, prosecutors, and probation officers are all entitled to absolute immunity for their actions at Valentine's sentencing") (citing *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir. 1996) ( "[P]rosecutor[ ]s [enjoy] absolute immunity from claims for damages arising out of prosecutorial duties that are 'intimately associated with the judicial phase of the criminal process.' "); *Hili v. Sciarrotta,* 140 F.3d 210, 213 (2d Cir. 1998) ("Judges performing judicial functions within their jurisdictions are granted absolute immunity."); *Dorman v. Higgins,* 821 F.2d 133, 136–37 (2d Cir. 1987) (holding that "federal probation officers preparing and furnishing presentence reports to the court" are entitled to absolute immunity).

Plaintiff names the Sedgwick County Board of Commissioners as a defendant. Plaintiff alleges that the Board of Commissioners are the policy makers for the Sedgwick County Jail. (Doc. 9, at 11.) "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Wright v. City of Ponca City*, 2023 WL 5765848, at *7 (10th Cir. Sept. 7, 2023) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also id*. at 691 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.")). Instead, "the government as an entity" can only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id*. (quoting *Monell*, 436 U.S. at 694). To establish municipal liability a plaintiff must demonstrate the existence of a "municipal policy or custom." *Id*. (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th

Cir. 2010)). Then the "plaintiff must demonstrate 'a direct causal link between the policy or custom and the injury alleged.'" *Id*. at n.9 (citing *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Bryson*, 627 F.3d at 788)).

"[T]he Supreme Court has held that in 'limited circumstances,' a failure to train can be the basis for liability under § 1983." *Horocofsky*, 2022 WL 1421554, at *29 (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). Only when a municipality's failure to train employees evidences a " 'deliberate indifference' to the rights of inhabitants" can a failure to train be considered "a city 'policy or custom' that is actionable under § 1983." *Id.* (quoting *Canton*, 489 U.S. at 389). To show deliberate indifference, a plaintiff must show that the municipality had "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation," and a conscious or deliberate choice to disregard the harm. *Id.* (citation omitted).

However, this Court has recently held that a board of county commissioners is not a proper party to a suit based upon allegations of misconduct by jail deputies. *See Ponce v. Sedgwick Cty. Sheriff's Office*, 2025 WL 958256, at *7–8 (D. Kan. March 31, 2025) (finding that Kansas statutes give sheriffs, not county commissions, the authority to hire, train, and supervise deputies and operate a jail).

Plaintiff should show good cause why his official capacity claims, claims against the KDOC, claims under K.S.A. § 60-5004, claims against ADA Chotimongkol, and claims against the Sedgwick County, Kansas, Board of Commissioners, should not be dismissed for the reasons stated in this Memorandum and Order to Show Cause.

Plaintiff should also indicate whether or not any of his state court proceedings remain pending. To the extent Plaintiff's claims relate to his state court proceedings in Sedgwick

County, Kansas, the Court would be prohibited from hearing Plaintiff's claims regarding his state court proceedings under *Younger v. Harris*, 401 U.S. 37, 45 (1971). "The *Younger* doctrine requires a federal court to abstain from hearing a case where . . . (1) state judicial proceedings are ongoing; (2) [that] implicate an important state interest; and (3) the state proceedings offer an adequate opportunity to litigate federal constitutional issues." *Buck v. Myers*, 244 F. App'x 193, 197 (10th Cir. 2007) (unpublished) (citing *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1204 (10th Cir. 2003); *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). "Once these three conditions are met, Younger abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain." *Buck*, 244 F. App'x at 197 (citing *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)).

Online records show that Plaintiff's criminal proceedings may be pending on appeal. *See State v. Collins*, Case No. 2021CR001345 (District Court of Sedgwick County, Kansas). The docket for the 2021 Case that the case is pending on appeal. Plaintiff has also filed a state habeas action related to the 2021 Case. *See Collins v. State*, Case No. 23CV300251 (District Court of Sedgwick County, Kansas). On July 30, 2024, the district court denied Plaintiff's K.S.A. 60-1507 motion, noting that Plaintiff indicated that his motion originated from 21CR1345, but also made arguments regarding 18CR2631 and 15CR2717. *Id.* at July 30, 2024 Memorandum and Order Denying Motion Pursuant to K.S.A. 60-1507. The court noted that:

> Although[] movant indicates this motion emanates from 21CR1345, movant alleges he was "unlawfully seized of his person in violation of the Fourth Amendment to the United States Constitution" in 15CR2717. Movant essentially claims his conviction of aggravated assault of a law enforcement officer in 15CR2717 was improper, and he should never have been on parole which led to 18CR2631. Additionally, he should have never been required to register which led to 21CR1345.

11

> Movant's motion is untimely, and is an improper collateral attack
> on his conviction in 15CR2717.  Movant is not entitled to relief.
> The court denies his motion without appointing counsel or
> conducting an evidentiary hearing.

*Id*. at p. 2–3.  Plaintiff appealed the denial of his 60-1507 motion, and the docket reflects that the case is currently pending on appeal.  Plaintiff also has another state 60-1507 action that shows it is pending on appeal.  *See Collins v. State*, Case No. 2019-CV-001777 (District Court of Sedgwick County, Kansas).

If Plaintiff's state court proceedings are pending, the first and second conditions for *Younger* abstention would be met because Kansas undoubtedly has an important interest in enforcing its criminal laws through criminal proceedings in the state's courts.  *In re Troff*, 488 F.3d 1237, 1240 (10th Cir. 2007) ("[S]tate control over criminal justice [is] a lynchpin in the unique balance of interests" described as "Our Federalism.") (citing *Younger*, 401 U.S. at 44).  Likewise, the third condition would be met because Kansas courts provide Plaintiff with an adequate forum to litigate his constitutional claims by way of pretrial proceedings, trial, and direct appeal after conviction and sentence, as well as post-conviction remedies.  *See Capps v. Sullivan*, 13 F.3d 350, 354 n.2 (10th Cir. 1993) ("[F]ederal courts should abstain from the exercise of . . . jurisdiction if the issues raised . . . may be resolved either by trial on the merits in the state court or by other [available] state procedures.") (quotation omitted); *see Robb v. Connolly*, 111 U.S. 624, 637 (1984) (state courts have obligation 'to guard, enforce, and protect every right granted or secured by the constitution of the United States . . . .'"); *Steffel v. Thompson*, 415 U.S. 452, 460–61 (1974) (pendant state proceeding, in all but unusual cases, would provide federal plaintiff with necessary vehicle for vindicating constitutional rights).

"[T]he *Younger* doctrine extends to federal claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding."  *D.L. v.*

*Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004).  A claim for monetary relief may be stayed pending the resolution of the pending criminal charges.  *See Garza v. Burnett*, 672 F.3d 1217, 1220 (10th Cir. 2012) (citing *Wallace v. Kato*, 549 U.S. 384, 393 (2007)); *Myers v. Garff*, 876 F.2d 79, 81 (10th Cir. 1989) (directing district court to stay claim for damages).

Plaintiff should show good cause why the Court should not abstain from hearing any claims that relate to pending state court proceedings in the District Court of Sedgwick County, Kansas.  Plaintiff should also indicate if he is seeking a stay of this case.

**IV.  Response Required**

Plaintiff must show good cause why his various claims should not be dismissed for the reasons stated herein.  Plaintiff should also advise the Court as to whether or not his state court proceedings remain pending, and if so, why the Court should not abstain from hearing claims related to those proceedings, or stay this case.  Failure to respond by the deadline may result in dismissal of this case without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **August 14, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated July 14, 2025, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**